| 51 | 215 |
| 83 | 209 |

## Lake Shore & M. S. Ry. Co. v. Dorata Rohlfs, Administratrix, etc.

1. CARE AND DILIGENCE—*Exercise of*—*Rejection of Evidence.*—In an action by an administrator against a railroad company for damages sustained by the death of an employe, it is error to reject evidence of the foreman of such company tending to show that the employe was not in the exercise of due care and diligence when the injury occurred.

2. EVIDENCE—*Under the Statute and at Common Law.*—Chapter 51 R. S., entitled "Evidence and Depositions," is a statute removing, not adding to, the disqualification of witnesses under the common law.

Memorandum.—Action for damages resulting by reason of a death from negligent acts. Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at

the October term, 1893. Reversed and remanded. Opinion filed Decem_
ber 21, 1893.

The statement of facts is contained in the opinion of the
court.

GARDNER & McFADON and PLINY B. SMITH, attorneys for
appellant.

CASE, HOGAN & CASE, attorneys for appellee; F. A.
MITCHELL, associate counsel.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.
Frederick Rohlfs was killed March 4, 1890, while at work
for appellant in its Forty-third street yards, Chicago. He
was a car repairer, and was at work making steam pipe con-
nections between two baggage cars standing upon a side
track used for making up passenger trains. It was while he
was at work down between the two baggage cars that he
was killed by the two cars being suddenly forced together by
another car being "kicked" against them, at a moment when
his head was between their coupling castings.

The appellee is his widow and administratrix.

From a judgment for $5,000 recovered in her favor in the
Circuit Court, this appeal is prosecuted.

One of the grounds for a reversal urged by appellant, is
that the court excluded the testimony of one Kirby as to
certain facts sought to be proved by him.

Kirby was general foreman of car repairs for appellant at
the time Rohlfs was killed, and Rohlfs was under Kirby's
direction and supervision.

Kirby was a witness for the appellant, and after testifying
generally to his position and relationship to appellant and
to Rohlfs, the following took place:

"Q. Had you prior to his (meaning Rohlfs') death given
him any directions about the use of flags?

Objection by plaintiff because Mr. Rohlfs is dead; objec-
tion sustained, and exception by defendant.

Mr. McFadon: Now, that there may be no misunder-

standing, I want to offer to show that the witness, in his capacity as superior to the deceased, prior to the time of his injury, issued an order to the deceased and notified him direct and in person not to go under cars when trains were being made up without putting a flag at the head of the car in the direction from which the other cars were moving.

Offer objected to by plaintiff, because Frederick Rohlfs is dead, and the statute excludes proof of the conversation by witness. Objection sustained; defendant excepted.

Witness continuing, said: Prior to the time deceased was injured there was a custom or rule with reference to the use of flags in connection with the making up of a train. The custom was for a man going under cars to work to put up a flag to protect himself at the farthest end from where he was working, and where the cars or engine would approach him. * * * The rule was that all men should use a flag when they were in dangerous places working. Being under cars when trains were being made up would be considered dangerous.

Q. Had the deceased, Rohlfs, any knowledge of that rule?

Objection by plaintiff; sustained, and exception by defendant.

Q. Have you knowledge as to whether the deceased, Frederick Rohlfs, had knowledge of the custom and practice you have spoken of as obtaining to that yard?

Objection by plaintiff; sustained, and exception by defendant.

Defendant then offered to prove by his witness, that the deceased, Frederick Rohlfs, had knowledge of the custom and practice obtaining in that yard with reference to the use of flags and that this witness knew of his complying with that rule at times.

Objection by plaintiff; sustained by court as incompetent and exception by defendant.

Witness, continuing, said: Frederick Rohlfs to my knowledge did comply with the custom of putting up flags at times. I saw him myself.

Q. Did you have any conversation with him just prior

to his death about his being careless in not putting out flags when going under cars ?

Objection by plaintiff; sustained and exception by defendant.

Court: I will sustain the objection to that question. The fact that he had a conversation at the time you can bring out if you want to, but I will not allow you to bring out the conversation.

Exception to ruling, by defendant.

Q. Did you have any conversation with the deceased, prior to the time of his death, about not going under trains of cars without putting out flags when doing so ?

Objection by plaintiff; sustained, and exception by defendants.

Defendant then offered to show by this witness that he did have such a conversation, and that witness had told the deceased he must not go under cars without putting out flags.

Objection by plaintiff; sustained, and exception by defendant.     *     *     *

Witness continuing, said: Have seen the deceased under cars without putting out flags.

Q. Did you ever caution him at such times with reference to his danger ?

Objection by plaintiff; sustained, and exception by defendant.

Q. You were his superior ?   A.   I was; yes, sir."

The foregoing quotations from the abstract of the bill of exceptions presents, fully and fairly, the question of whether it was competent to prove statements and orders made and given to Rohlfs, he being now dead, by his foreman or superior, concerning the rule or custom of the yard, his knowledge of that rule or custom, and the danger of working under cars in disregard of that rule or custom.

It appears from the bill of exceptions that the objection to the excluded testimony was made and sustained on the theory that it was incompetent, either at common law or under the statute. If it were not incompetent at common

law, it was certainly not made so by the statute. The act of 1867, Secs. 1 to 8, Chap. 51, Rev. Stat. Ill., entitled "Evidence and Depositions," was a statute removing, not adding to, the disqualifications of witnesses.    Whether Kirby, the foreman, would, or not, have been incompetent at common law, to testify upon the questions proposed, under the principles discussed in Railroad Co. v. Welch, 24 Ill. 33, he became competent by the act of 1867, though he were not so before.  I. C. R. R. Co. v. Weldon, 52 Ill. 290; Dunham T. & W. Co. v. Christensen, 44 Ill. App. 523.

Kirby had no legal interest in the result of the suit.  It can not be claimed from the evidence, that he was directly responsible for the accident, and he could not in any view we take of the case, have been liable over the appellant.

The case of Witmer v. Rucker, 71 Ill. 412, is not inconsistent with R. R. Co. v. Weldon, *supra.*  There, the opinion of the court expressly states that Crissey, the rejected witness, was a co-defendant, and therefore he was plainly incompetent.

The offered testimony was very important and material. Although it was shown that a general rule or custom prevailed in the yards with reference to the use of flags upon cars under which work was being performed, as signals, or warnings, not to suddenly move such cars, it was a matter of first importance to the defense to be allowed to prove that Rohlfs knew of the rule or custom, and had been expressly cautioned by his superior in employment that he should always observe it, and that it was dangerous to omit it.

The same rule as to the exercise of reasonable care applies to cases where men are killed, as to where they are only injured.

In either case it is important to ascertain whether due care was exercised by the party suffering, and a material inquiry in that direction is as to what he knew of the circumstances surrounding him.  The extent of his knowledge upon the subject can be determined, in case of his death, only by finding out what he had previously said, how he had

acted, and what had been said to him. Whether a man knows a thing or not, may frequently be determined by way of conclusion from other facts. Such knowledge may be inferred from evidence of his practices, and of statements made by him or made to him.

If a child was to repeat the multiplication table it would not be necessary for him to say he knew it. The fact that he knew the table would conclusively appear in the other fact that he had repeated it.

So, here, the fact of Rohlfs' knowledge of the rule or custom of the yards with reference to putting up flags might have been made out, to a *prima facie* extent at least, by evidence that he had been told of it and cautioned against the danger of omitting its observance.

Such evidence would not be of a narrative character, but would be as much in the nature of original evidence of the fact of his knowledge, as if, in case the rule had been printed and posted in the yards, evidence had been offered that he had been seen to read it.

The offered evidence should have been admitted in aid of the inquiry as to what was his knowledge of the rule, or the danger of working without putting out a flag.

There are various other considerations urged upon us as to why the judgment should be reversed, pertaining most noticeably to the instructions given the jury, and should be commented upon to a partial extent, even though, if either one stood alone, a reversal because thereof, might not necessarily follow.

In the eleventh instruction offered by the appellant, the court inserted the words, "and the other instructions of the court" so as to cause the instruction, as given, to read: "If you believe from the evidence and the other instructions of the court, that the said servants," etc., then, etc.

Juries are to form their belief as to facts from evidence alone.

Especial fault is also found with the giving, unmodified, of the twelfth of appellee's instructions.

The instruction, as given, was:

" The jury are instructed, that if they find for the plaintiff, they may assess the damages at such a sum as will be a fair compensation, with reference to the pecuniary injuries resulting from such death, to the widow and next of kin of Frederick Rohlfs, not exceeding the sum of five thousand dollars."

It will be observed there was a total absence of reference in the instruction to the evidence as a basis for the jury to act upon.

It was of such an instruction, that the Supreme Court, in C., B. & Q. R. R. Co. v. Sykes, Admr., 96 Ill. 162, remarked:

" The instruction is inaccurate in telling the jury that if they found defendant guilty, they might assess plaintiff's damages at some amount not exceeding $5,000, the amount claimed in the declaration. This part of the instruction leaves the jury at liberty to find any amount not exceeding the amount claimed without the slightest reference to any proof of the amount of damages sustained. It amounted to an uncontrolled license to find any sum under the limit that they might choose, and as they have found to the full limit, it may be, and probably they did, exercise the liberty the instruction gave them without reference to the evidence on that question. In this class of cases, instructions should be accurate and precise in reference to the finding of damages. This may have misled, and probably did mislead the jury in assessing damages."

The cause having to be remanded for a new trial, we will not follow the appellant through all of its objections, most of which may and probably will be avoided at another trial, further than to say that we think the declaration was sufficient, and cite in support thereof the recent case of Libby v. Scherman, 34 N. E. Rep. 801.

The judgment will be reversed and the cause remanded.