JOHN G. CAMPBELL

v.

JOHN GOODALL ET AL.

</div>

1. JUDGMENT—A BAR.—A judgment upon a promissory note is, as between the parties to the record, and their privies, conclusive as to the validity of the instrument.

2. ESTOPPEL.—The effect of an estoppel is that it is a finality; not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other admissible matter which might have been offered for that purpose.

3. SURETY—SUBROGATION.—Where a party signs a note as surety, and and afterwards pays the amount due on the note, he becomes subrogated to all the rights of which the holder of the note was possessed in respect of the same transaction in which he became liable as surety, and which he could render available against the principal debtor, and this includes the right of estoppel vested in the creditor.

4. PLEADING—GENERAL ISSUE.—Where a plaintiff declares generally upon the common counts, the defendant may do likewise and plead *non-assumpsit*, and under this issue may introduce any evidence to meet the case made by the plaintiff in his evidence.

Campbell v. Goodall.·

Appeal from the Circuit Court of Jackson county; the Hon. O. A. Harker, Judge, presiding. Opinion filed April 7, 1881.

Mr. A. D. Duff, Mr. G. W. Smith and Mr. R. J. Stephens, for appellant; as to estoppel and when it arises, cited Hefner v. Dawson, 63 Ill. 403; Hefner v. Vandolah, 62 Ill. 483; Noble v. Chrisman, 88 Ill. 186; Boggs v. Olcott, 40 Ill. 303; Kitner v. Whittock, 88 Ill. 513; Silverman v. Chase, 90 Ill. 37.

As to the effect of a judgment as an estoppel: Cromwell v. County of Sac, 94 U. S. 351.

Mr. W. J. Allen and Messrs. Barr & Lemma, for appellees; that where the evidence is conflicting, if the verdict is not clearly against the evidence, it will not be disturbed, cited C. & R. I. R. R. Co. v. N. Ill. Coal, etc., Co. 36 Ill. 60; Allen v. Smith, 3 Scam. 97; Weldon v. Francis, 12 Ill. 460; Hope Ins. Co. v. Lonergan, 48 Ill. 49; T. W. & W. Ry. Co. v. Moore, 77 Ill. 217; Miller v. Balthasser, 78 Ill. 202; Gilbert v. Bone, 79 Ill. 341.

Instructions should be considered as a series: Nor. L. Packet Co. v. Binninger, 70 Ill. 571; Lawrence v. Hagerman, 56 Ill. 68.

The third instruction for defendants, that a verdict must be against all the defendants or none, announces a correct principle of law: Gould v. Sternberg, 69 Ill. 531; C. & St. L. R. R. Co. v. Easterly, 89 Ill. 156.

Instructions should apply to the case: Leach v. Nichols, 55 Ill. 273; Mitchell v. Town of Fond Du Lac, 61 Ill. 174.

It is of the essence of an estoppel *in pais* that the party should have been misled to his prejudice: Pitts Sons Mf'g. Co. v. Poor, 7 Bradwell, 24; The People v. Brown, 67 Ill. 435.

When a partnership has terminated the several partners lose their authority to act for the whole: Miller v. Neimerick, 19 Ill. 172.

Baker, J. Assumpsit on the common counts by appellant against appellees. Verdict and judgment in the Jackson Circuit Court in favor of appellees. The claim made by appellant was that on the first day of October, 1876, he executed six promissory notes, each for the sum of $430.51, together with and as

security for appellees, these notes being payable to Benedict, Hall & Co. and bearing seven per cent. interest from date; that a suit was instituted in the county court on two of these notes and a judgment rendered for the amount of the notes, against appellees and appellant, on the 18th day of January, 1878, upon which judgment an execution was issued, and that he paid off this execution on the 30th of April, 1878, the payment being made to the deputy sheriff Toler, and the amount paid being $973.05.

The theory of the defense was that although the claim of Benedict, Hall & Co. was the debt originally of the appellees, as co-partners, yet, that several months before the making of these notes in controversy, appellees had sold out their stock of goods, accounts, etc., to the firm of North, Campbell & Co., of which firm the plaintiff was a member, in consideration of which sale the firm of North, Campbell & Co. had assumed the payment of all the debts of Goodall, Campbell & Dunaway, including this debt to Benedict, Hall & Co.; that the firm of Goodall, Campbell & Co. was thereupon dissolved, and that these notes in controversy were executed by the plaintiff in pursuance and in part performance of this contract of North, Campbell & Co. The plaintiff contended in rebuttal that the firm of North, Campbell & Co. only assumed the payment of debts of Goodall, Campbell & Dunaway to the amount of $8,600, and that they had actually paid more than that amount exclusive of this Benedict, Hall & Co. debt; denied that the execution of these notes by him had any relation to or anything to do with the contract of North, Campbell & Co., and it was also contended as matter of law, that appellees having failed to raise the question of the want of authority in M. C. Campbell to execute the notes in the firm name at the time suit was instituted on the notes, were estopped from setting up any such defense in this action, especially under the pleadings in the cause.

The testimony on the question whether appellant signed the notes as security for Goodall, Campbell and Dunaway was quite conflicting. We are of the opinion the court very properly admitted in evidence, as calculated to throw light upon

that issue, testimony as to the terms of the contract made between that firm and North, Campbell & Co. at the time of the sale ; and also, that there was no error in instructing the jury they might take into consideration the evidence before them in regard to the terms of the contract in passing upon the question whether appellant signed the notes as surety. The second instruction given for appellees was also proper. It merely informed the jury the burthen was upon the plaintiff to establish by a preponderance of the evidence that he signed the notes as surety for Goodall, Campbell & Dunaway. Paul v. Berry, 78 Ill. 158. The fact that appellees, in order to meet the *prima facie* case made by appellant, introduced testimony tending to show appellant signed the notes in a capacity other than that of security and under circumstances claimed to be inconsistent with appellant's theory, did not have the effect to shift the burden of proof.

It does not appear from the record that it was distinctly claimed by appellees on the trial that M. C. Campbell, after the dissolution of the firm of Goodall, Campbell & Dunaway, had not authority to execute the notes in the name and on behalf of the firm. But it does appear the notes were executed *after* the dissolution, by M. C. Campbell, in the name of the firm ; and Dunaway testified he never knew anything about the notes until suit was brought on them in the county court ; and Goodall testified he knew nothing of the existence of the notes until notice in regard to them was received from the bank. The court, at the instance of appellees, instructed the jury as follows:

"(3.) The court instructs you for the defendants that in this case you cannot find a verdict against any one of the defendants without finding a verdict against them all."

"(4.) That after the dissolution of a firm the admissions or statements of one of the late partners made in the absence of the other will not bind the other members of the firm."

And the court refused to give the two following instructions, asked by appellant:

"(4.) No question as to whether or not M. C. Campbell had authority to sign the firm name, when the notes introduced in

evidence were made, nor as to whether the partners were bound by these notes, can arise in this case under the issues formed and now being tried, and that question is not now before the jury, or to be considered by them."

"(5.) If the debt which was settled by the series of notes mentioned in evidence, of which series the two notes introduced in evidence were a part, was the debt of the defendants as co-partners, and the plaintiff became liable as sureties of the firm for that debt, or any part of it, then the fact that the co-partnership was afterwards dissolved does not affect the right of the plaintiff to recover against them jointly in this action, unless the want of authority of M. C. Campbell to bind the firm by the notes in question, had been presented and relied on by a proper plea when suit was instituted on the notes in question."

These two latter instructions are not strictly accurate. Appellant declared in *indebitatus assumpsit*, and by adopting this general mode of pleading he failed to give defendants any notice whatever of the nature of his demand upon them, and afforded them no opportunity to plead specially. When a plaintiff pleads thus, using the common counts, the defendant may do likewise and plead *non assumpsit*, and whatever case the evidence of the plaintiff may unfold, may be met by any testimony whatever the defendant may be able to produce, without special pleas and regardless of the character of the defense.

Were the rule otherwise, a trap might readily be set by parties plaintiff, and great injustice be done defendants. The first of these refused instructions is incorrect, so far as it calls special attention to "the issue formed." And the second instruction incorrectly states the testimony when it says the co-partnership was dissolved *after* "plaintiff became liable as surety for the firm for that debt."

As we understand the record there is no testimony to that effect.

But these are small matters—mere clerical errors—and could readily have been corrected by the court; and should have been so corrected if the substance of the instructions was

right, and the exigencies of the case and the demands of justice required that the principles involved should be given to the jury.

This brings us to the point. The admitted fact that the notes were executed after the dissolution of the firm, and the testimony of Dunaway and Goodall that they knew nothing about the notes until long after their execution, were all before the jury. In that state of the case the court gave the the 3rd and 4th instructions asked by appellees. The third instruction announced a correct principle of law, but one that could have no possible bearing upon the case before the jury except upon the theory, the jury might, in view of the prior dissolution of the firm and the statements of Dunaway and Goodall find for defendant, on the ground that M. C. Campbell had no authority to sign the firm name to the notes. The jury, upon the heels of the argument of counsel, would so understand it; it would not be susceptible of any other interpretation; and the 4th instruction, which immediately followed, would make the assurance of the jury doubly sure. If the authority of M. C. Campbell to sign the firm name to the notes could not be raised in the case, then this third instruction was well calculated to mislead the jury; more especially when considered in the connection in which it was given.

The gist of the 4th refused instruction was that the question of M. C. Campbell's authority was not before the jury and was not to be considered by them; and the point of the 5th refused instruction was that the authority of M. C. Campbell to bind the firm by the notes in question was settled by the suit and judgment on said notes in the county court. In the suit in the county court against appellant and appellees, jointly, the notes were specially declared on, and there was service on and a plea by all the defendants; and upon issue and trial there was a verdict and final judgment against them all. Was that verdict and judgment conclusive of the fact the notes were the promissory notes of the firm?

We understand the rule to be, that a verdict and judgment are conclusive of all matters necessarily presupposed by the finding. A judgment rendered upon a promissory note is, as

between the parties to the record and their privies, conclusive as to the validity of the instrument. The effect of a judgment, as a bar or estoppel, is that is is a finality, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Cromwell v. County of Sac, 94 U. S. 351. In Sturtevant v. Randall, 53 Maine, 149, it was held that when a judgment has been rendered against a person upon the verdict of a jury, finding him to be an original promisor of the note in that suit instead of an indorser, he is estopped to deny that relation in any litigation with any other party to the note. In the case before us, appellant was a party both to the note and the judgment on the note. Again, the judgment in the county court case conclusively established the fact, as between Benedict, Hall & Co., and payees and these appellees, that the signature of the firm name of Goodall, Campbell & Dunaway, to the two notes was the signature of the three persons composing that firm. If John G. Campbell signed the note as security for Goodall, Campbell & Dunaway, and afterwards paid the amount due on the note and judgment to Benedict, Hall & Co., then he would be subrogated to all the rights of which the creditors were possessed in respect of the same transaction in which he became liable as security and which he could render available against the principal debtor, and this wou'd include the right of estoppel, vested in the creditors. If the creditor is the purchaser of an annuity, and the grantor has reserved to him a power of repurchasing it upon certain terms, the surety has the same right, and may become the purchaser of the annuity upon the like terms. Capel v. Butler, 2 Sim. & S. 457. So, also if from inadequacy of consideration, or from any other cause, the principal may claim relief in a court of law or equity, in respect of an annuity, the same relief will be given to the surety. Underhill v. Harwood, 10 Ves. Jr. 209. The equitable and just rules on this subject, formerly applicable only to a court of equity have been fully recognized and enforced in courts of law. Phares v. Barbour, 49 Ill. 370; Rogers v. Trustees of Schools, 46 Ib. 428.

We think the jury were improperly instructed with reference to the effect of the trial and judgment in the county court; that the matter was not fairly presented to them; that the 3d and 4th instructions given by appellees were calculated, under the circumstances of the case, to mislead, and that the 3d instruction should not have been given. We also think the court should have given the jury the principle involved in the refused instructions. It is probable the verdict was rendered, not upon the real question in issue, but upon the question of the authority of M. C. Campbell to sign the firm name to the notes—and this matter was *res adjudicata*, and already decided adversely to appellees.

For the reasons suggested herein, the judgment is reversed, and the cause remanded.

<div align="right">Reversed and remanded.</div>