### James S. McDavid *et al.*

*v.*

### John McLean *et al.*

*Opinion filed April 24, 1903*

1. Bills and notes—*each guarantor is liable, in equity, to his proportionate contribution.*   If any one or more of a number of joint guarantors of a promissory note are obliged to pay the same, the co-guarantors are liable, in equity, to contribute their proportionate share of the amount so paid.

2. Same—*it is presumed, in equity, that guarantors are to contribute equally.*   In equity it is presumed, *prima facie,* that all joint guarantors are to contribute equally to discharge any liability arising under the guaranty, those who are insolvent being excluded in determining the proportion; but this presumption may be rebutted by parol evidence.

3. Same—*party signing note may show that he was a surety.*   Parties signing a note executed by a corporation may show by parol proof that they were but sureties and that such fact was known to the payee or holder of the notes; and such parol evidence is also admissible in determining the right of a guarantor to contribution from his co-guarantors.

4. Same—*when presumption that contribution is to be equal is not overcome.*   The presumption that contribution amongst joint guarantors of a note is to be equal is not overcome by proof that the guarantors seeking contribution had signed the note on its face, where the note was executed by a corporation, in which all the guarantors were stockholders, to evidence a loan to the corporation for corporate purposes, and where the fact that the guarantors who signed the note signed only as sureties was known to the other guarantors.

5. Costs—*right to costs in case of dismissal of bill.*   The dismissal of a bill as to an administrator entitles him to recover his costs, under section 18 of the Costs act.

Cartwright and Hand, JJ., dissenting.

*McDavid* v. *McLean,* 104 Ill. App. 627, reversed in part.

Writ of Error to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Montgomery county; the Hon. Truman E. Ames, Judge, presiding.

Jett & Kinder, and Lane & Cooper, for plaintiffs in error.

Miller & Miller, and William Abbot, for defendants in error.

Mr. Justice Boggs delivered the opinion of the court:

This was a bill in chancery exhibited in the circuit court of Montgomery county by the defendants in error, against the plaintiffs in error and others, for a decree for contribution as co-guarantors on certain promissory notes executed by the Coffeen Coal and Copper Company. James W. Lewis, since deceased, and James B. McDavid, also deceased, were also co-guarantors, and the respective administrators of the estates of the said deceased persons were made parties defendant, but the bill was dismissed as to said administrators while the cause was pending in the circuit court. The defendants answered the bill, and by leave of the court filed a cross-bill. Replication was filed to the answer, and answers were filed to the cross-bill, and replications thereto. The evidence was taken and the cause submitted to the court, and a decree rendered granting the prayer of the bill. The Appellate Court for the Third District having affirmed the decree, this writ of error was sued out of this court to bring the record before us for review.

The parties hereto, together with James W. Lewis and James B. McDavid, both now deceased, were in 1892 the holders of stock in the Coffeen Coal and Copper Company, a corporation organized under the laws of the State of Illinois. The said coal and copper company arranged to borrow $20,000. One Jacob J. Frey undertook to procure the money for the company. On the 20th day of

December, 1892, seven notes were executed and delivered to Frey,—one for $10,000, one for $5000 and five each for $1000, payable to said Frey. The notes read, "We promise to pay to Jacob J. Frey," etc. Five of the notes were signed as follows: "Coffeen Coal and Copper Company, by James B. McDavid, Pres., James S. McDavid, Sec., John McLean, William Harvey." The other two notes bore the same signatures, save that the word "director" was written after the name of William Harvey. The notes bore six per cent interest, payable semi-annually, which was further evidenced by coupon notes, which were signed only by the Coffeen Coal and Copper Company, by James B. McDavid, president, and James S. McDavid, secretary. Each of the notes bore the following endorsement: "We guarantee the payment of this note with any interest that may be due." The parties hereto, plaintiffs in error and defendants in error, together with said James B. McDavid and James W. Lewis, both deceased, signed each of the guaranties so endorsed on said notes. The signatures appearing first to the guaranties were those of James B. McDavid, James S. McDavid, William Harvey and John McLean, who, as before said, constituted the board of directors of the Coffeen Coal and Copper Company, and whose names appeared upon the face of the notes, as heretofore shown. The notes were also secured by a mortgage executed by the Coffeen Coal and Copper Company, by its said president and secretary, on the real estate owned by the corporation. Default occurred in the payment of the notes, and suits at law were instituted on the notes against the coal company and said McLean and Harvey. Judgments were entered against the company and said McLean and Harvey as makers of the notes. The mortgage was foreclosed and the real estate sold, leaving a balance unpaid on the mortgage indebtedness. This balance was paid by John McLean, Duncan McLean and William Harvey, the two former paying, jointly, $6304 and Harvey paying the sum

·of $1000. They brought this bill to enforce contribution from their co-guarantors.

The legal effect of the execution of the guaranty was to make each guarantor liable for the payment of the notes so guaranteed. It is a general rule enforcible in equity, that if any one or more of a number of joint guarantors of a promissory note shall be required to pay the whole or any portion of the note so guaranteed, the co-guarantors become liable in equity to contribute their proportionate part or share of the amount so paid. The presumption arises *prima facie* in equity that all joint guarantors should contribute equally to the discharge of any liability occurring by reason of the execution of the guaranty, any that are insolvent being excluded in determining the proportions. (7 Am. & Eng. Ency. of Law,—2d ed.—341; 1 Brandt on Suretyship and Guaranty,—2d ed.—sec. 254.) This liability to contribute arises from equitable principles, and the presumption that all guarantors should contribute ratably to the discharge of any liability created by the guaranty may be rebutted by parol evidence. 1 Brandt on Suretyship and Guaranty,—2d ed.—sec. 261; *Paul* v. *Berry*, 78 Ill. 158; *Robertson* v. *Deatherage*, 82 id. 511.

It appeared, however, in the case at bar, that the said John McLean and William Harvey, two of the complainants who sought to enforce contribution, were the same persons whose names appeared on the face of the notes as payors thereof, as before shown, and the plaintiffs in error contend that said John McLean and William Harvey were legally bound as payors of the notes, and that in making the payments for which they sought re-imbursement they were but discharging the liability which rested upon them as makers of the notes, and that no presumption of liability of the other guarantors to make contribution to them could arise or exist. It is a general rule that the true relation subsisting between several sureties or guarantors who are bound for the performance of a

written obligation may be shown by parol. (1 Brandt on Suretyship and Guaranty, sec. 261; *Paul* v. *Berry, supra; Robertson* v. *Deatherage, supra.*) The court heard the testimony of a number of witnesses, some of whom, being parties to the record and parties in interest, were incompetent to testify, as against the administrators of James B. McDavid and James W. Lewis, as to any fact which occurred before the death of such deceased persons. The bill was, however, dismissed as to the administrators of said deceased guarantors, and the objection as to the competency of such witnesses was thus obviated and removed. The testimony of the defendants in error John McLean and William Harvey, to the effect that they attached their signatures to the notes without intent to become liable thereon as makers, and for the reason they understood that being directors of the said coal and copper company it was necessary they should sign the notes in order to make them legal and binding obligations of the corporation, would have been entirely incompetent as against the payee or any holder of the notes, and, as against the guarantors, should not have been received, for the reason there was no testimony to show that the plaintiffs in error were advised that said John McLean and said Harvey had so signed only as directors of the corporation. It appeared, however, from the parol proof, without dispute, that the indebtedness evidenced by the notes was that of the Coffeen Coal and Copper Company and that such corporation was the principal and real debtor, and this was well known to all the guarantors; that all of the parties who signed as guarantors of the notes were holders of the stock of said coal and copper company and that all the money for which the notes were given was borrowed by the coal and copper company and for the use of the company, and that all the guarantors of the notes understood that said John McLean and William Harvey, if liable at all on the notes, were liable as sureties only, and not as principals. It

also appeared that at once after the said John McLean and William Harvey had placed their signatures on the face of the notes, the contracts of guaranty were written on the back of each of the notes and each of said contracts of guaranty was at once signed by the said James B. McDavid and James S. McDavid, who had signed the notes as president and secretary, respectively, of the coal and copper company, and also signed by the said John McLean and William Harvey, and that afterwards the names of the plaintiffs in error were written by them to each of said guaranties, below and following the names of said McDavids, McLean and Harvey.

The proof did not disclose that any express agreement existed between the parties so signing as guarantors limiting or affecting in any manner their liabilities. James S. McDavid, one of the defendants to the bill and one of the plaintiffs in error in this court, who appeared as a witness in behalf of the plaintiffs in error, testified: "When the notes were signed we did not expect anybody to pay them but the company, but I expected that if we had to pay the notes that John McLean and William Harvey would have to pay the notes before the guarantors would. This is the way I understood the transaction at the time. I guaranteed them on that condition. The guarantors of the notes were all stockholders. I had an impression that the guarantors would pay the note if they were compelled to, in proportion to their stock, but there was no agreement to that effect. That was just an impression of my own." Under this state of the proof we do not think the chancellor erred in holding that the equitable presumption that each of the guarantors should pay, equally, any amount which the Coffeen Coal and Copper Company should fail to pay had not been overcome by the mere fact that two of the guarantors were sureties for the principal debtor on the notes.

As to the payee of the notes and any holder thereof, said John McLean and William Harvey, though they

could not deny such liability as arose, in law, by reason of their having signed the notes, yet they might lawfully show by parol proof that they were but sureties and that such fact was known to the payee or holder of the notes, and thereby secure to themselves the rights, privileges and immunities they were entitled to as sureties. (Brandt on Suretyship and Guaranty, sec. 29; *Ward* v. *Stout,* 32 Ill. 399; *Flynn* v. *Mudd & Hughes,* 27 id. 323; *Robertson* v. *Deatherage, supra; Kennedy* v. *Evans,* 31 Ill. 258.) Parol evidence that they were but sureties was equally admissible in determining their right to contribution from their co-guarantors. The debt being that of the coal and copper company, the said McLean and Harvey being but sureties on the notes, the guarantors being stockholders of the coal and copper company and being interested in the payment of the debt of the company, and all well knowing that McLean and Harvey were but sureties, the fact that said McLean and Harvey had signed the notes as sureties is not at all inconsistent with the general equitable presumption that all the guarantors were alike liable to make good any default on the part of the coal and copper company. The action of the plaintiffs in error in joining with the sureties on the notes in guaranteeing payment thereof seems to us to strengthen the equitable presumption that all guarantors should join in answering for any default of the principal makers of the notes, and in the absence of any agreement to the contrary they were properly regarded by the chancellor as having undertaken, jointly with said McLean and Harvey, to make good any sum which the coal and copper company failed to pay on the indebtedness secured by the notes. Such being the true view, it is clear that the chancellor correctly decreed that said John McLean and William Harvey were entitled to contribution. The right of Duncan McLean to demand contribution is, of course, beyond the necessity of discussion.

The decree granting the motion of the defendants in error to dismiss the bill as to the administrators of James B. McDavid and James W. Lewis, and dismissing the bill accordingly, did not contain an order decreeing that the said administrators should recover their costs against the complainants in the bill, defendants in error here. By a later provision in the final decree it was ordered and decreed that the plaintiffs in error should pay the costs of the proceeding. It is urged that the court erred in failing to specifically decree costs in favor of the said administrators and against the defendants in error, and that the effect of such failure, and of the later provisions of the decree that the plaintiffs in error should pay the costs of the proceeding, is to require plaintiffs in error to pay the costs which the defendants in error should have been required to pay upon the dismissal of the proceeding as to said administrators. Section 18 of chapter 33 of the Revised Statutes, entitled "Costs," provides that upon the complainant dismissing his bill in equity the defendant so dismissed out of court shall recover against the complainant full costs. The decree that the bill should be dismissed as to said administrators was a final disposition of the cause as to them. By the force and effect of said section 18 of the statute, before referred to, the administrators, respectively, became entitled to recover their costs. It was error to so frame the decree as to cast such costs on the plaintiffs in error. To that extent the decree must be and is reversed, otherwise the decree is affirmed. The cause will be remanded, with directions to the circuit court to decree the recovery of costs by the said administrator against the defendants in error.

The judgment of the Appellate Court is affirmed in part and in part reversed, and remanded with directions.

*Reversed in part and in part affirmed.*

Hand and Cartwright, JJ., dissenting.